UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

FERGUSON ENTERPRISES, INC.,                                                                  Plaintiff,

v.                                                                    Civil Action No. 3:15-cv-656-DJH-DW

GLENN HOLLENKAMP, et al.,                                                                  Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On August 7, 2015, Plaintiff Ferguson Enterprises, Inc. sued its former employees and rival Lockwood International, Inc., alleging that they misappropriated trade secrets and confidential information. (Docket No. 1)  Ferguson also moved for a temporary restraining order and a preliminary injunction. (D.N. 2, 3)  On August 28, 2015, the Court denied Ferguson's motion for a temporary restraining order. (D.N. 52)  On September 11, 2015, the defendants moved to compel arbitration and stay these proceedings, including Ferguson's Motion for Preliminary Injunction, contending that Ferguson is bound by its own arbitration agreement with its former employees and must arbitrate these claims. (D.N. 64)  For the reasons outlined below, the Court will grant the defendants' motion to compel arbitration and will stay the remaining claims against Defendant Lockwood.

**I.       BACKGROUND**

Ferguson accuses its former employees Glenn Hollenkamp, Keith Rager, Steven Collins, Jason Wemitt, Robert Renn, Joseph Dugan, John Brunetti, Olden "Frank" Durham (collectively the "Individual Defendants") and Lockwood International of nefarious business dealings. (D.N. 71)  Count I of the complaint alleges that Rager violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, *et seq*. (*Id*., PageID # 951-61)  Counts II, V, and VI allege that the

Individual Defendants, and in some instances Lockwood, misappropriated trade secrets and confidential information, while Count III alleges that Lockwood knew about the misappropriation of trade secrets and thus intentionally interfered with contractual relations between Ferguson and the Individual Defendants. (*Id.*) Count IV alleges that all of the defendants tortiously interfered with Ferguson's prospective business relationships. (*Id.*) Count VII alleges that the Individual Defendants breached a fiduciary duty, and Count VIII alleges that Lockwood aided them in breaching that fiduciary duty. (*Id.*) Finally, Count IX alleges that all of the defendants conspired to steal Ferguson's confidential and proprietary information.

These allegations follow from each Individual Defendant's abrupt departure from Ferguson for Lockwood during the summer of 2015. (*Id.*, PageID # 924; D.N. 64-1, PageID # 887) While employed by Ferguson, each Individual Defendant signed an arbitration agreement with Ferguson, which provided that any claims Ferguson might have against the Individual Defendants or any claims the Individual Defendants had against Ferguson would be subject to arbitration. (D.N. 64-2) Though Ferguson agrees that it must arbitrate its claims for damages against the Individual Defendants, it seeks preliminary injunctive relief in this Court. (D.N. 74, PageID # 1031) Ferguson contends that this Court has jurisdiction to grant injunctive relief, that the arbitration agreement allows the Court to grant equitable relief, and that the defendants' motion is nothing more than an attempt to delay these proceedings in order to take business from Ferguson. (D.N. 74, PageID # 1031-35)

Each arbitration agreement states: "The Company and I mutually consent to the resolution by arbitration of all claims or controversies ('claims'), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I (and no other party) may have against . . . the Company." (D.N. 64-2, PageID # 901)

However, "the Agreement does not prohibit the filing of or pursuit of relief through . . . a court action for temporary equitable relief in aid of arbitration, where such an action is otherwise available by law." (*Id.*) The agreement also provides that demand for arbitration must be made through JAMS arbitration service;[1] that JAMS Rule 24(e) allows an arbitrator to provide interim relief, including a preliminary injunction; and that the arbitrator will apply the substantive law of the state in which the claim arose. (*Id.*, PageID # 903; D.N. 77, PageID # 1183)

Ferguson sued on August 7, 2015, and simultaneously filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction. (D.N. 2, 4) The Court denied Ferguson's Motion for Temporary Restraining Order on August 28, 2015. (D.N. 52) The Individual Defendants submitted a Demand for Arbitration to the JAMS arbitration service on August 28, 2015. (D.N. 64-1, PageID # 888) To date, Ferguson has not asked JAMS for expedited or interim relief. (*Id.*) Instead, Ferguson continues to seek injunctive relief from this Court. (D.N. 3) The defendants filed a Motion to Compel Arbitration and Stay Proceedings (D.N. 64) on September 11, 2015 and request that the Court compel the matter to arbitration prior to hearing Ferguson's Motion for Preliminary Injunction. (D.N. 3) The motion to compel arbitration became ripe on October 6, 2015. (D.N. 74, 77, 84)

## II. DISCUSSION

The Sixth Circuit has identified four factors the Court should evaluate when considering a motion to compel arbitration under the Federal Arbitration Act:

> First, [the court] must determine whether the parties agreed to arbitrate; second, [the court] must determine the scope of that agreement; third, if federal statutory claims are asserted, [the court] must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not

---

[1] Judicial Arbitration and Mediation Services, Inc. is an organization that provides alternative dispute resolution services.

>all, of the claims in the action are subject to arbitration, [the court] must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). When analyzing these factors, "any doubts regarding arbitrability should be resolved in favor of arbitration." *Id*.

The Court finds arbitration to be the appropriate forum for both injunctive relief and all damages claims against the Individual Defendants. With respect to the first *Glazer* factor, it is undisputed that the Individual Defendants and Ferguson agreed to arbitrate any disputes that arose between them. (D.N. 64-1, PageID # 887) Indeed, Ferguson wrote the arbitration agreement, and its employees are bound by it unless they opt out. (*Id.*, PageID # 890) In the summer of 2014, Ferguson presented the arbitration agreement to its employees, explained the material provisions, and specified the method and deadline for acceptance. (*Id.*) The Individual Defendants accepted the provision; subsequently, they initiated arbitration per the agreement. (D.N. 64-1, PageID # 888)

Second, the arbitration agreement clearly encompasses the issues before this Court. The arbitration agreement states that the "Company and [employee] mutually consent to the resolution by arbitration of all claims or controversies, past, present, or future, whether or not arising out of [employee's] employment (or its termination)." (D.N. 64-2, PageID # 901) Though the agreement carves out a limited exception to seek temporary relief in court, it only permits this step "in aid of arbitration."[2]

---

[2] The relevant provision states: "The Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action in any way related to any claim covered by this Agreement, except that this Agreement does not prohibit the filing of or pursuit of relief through the following: (1) a court action for temporary equitable relief in aid of arbitration." (D.N. 64-2, PageID # 901)

Ferguson's attempt to seek preliminary relief has, indirectly, aided the arbitration process by providing a course for preliminary discovery on an expedited schedule. (D.N. 50) But holding an evidentiary hearing and making the necessary findings following the hearing would not merely aid the arbitration, but essentially supplant it. This would frustrate the policy of deferring to arbitration in those cases, like this one, where arbitration is well suited to resolve the issues between the parties. *See Glazer*, 394 F.3d at 451 (citation omitted). The Court finds no compelling reason to disregard that policy in this case. *Cf. Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1380 (6th Cir. 1995) ("[A] grant of preliminary injunctive relief pending arbitration is particularly appropriate . . . where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality because an arbitral award, at the time it was rendered, could not return the parties substantially to the status quo ante.") (internal quotations omitted). The Court notes that the parties may request injunctive relief in arbitration pursuant to JAMS Rule 24(e). (D.N. 64-1, PageID # 887-88)

As to the sole federal statutory claim asserted by Ferguson—violation of the CFAA—nothing suggests that Congress intended such claims to be nonarbitrable. Since "any doubts regarding arbitrability should be resolved in favor of arbitration," *Glazer*, 394 F.3d at 451, the Court concludes that Ferguson's CFAA claim is arbitable.

Finally, Ferguson's claims against the Individual Defendants are all arbitrable, but Ferguson's claims against Lockwood are not; those claims must be stayed. This Court has discretion to stay litigation among nonsignatories pending the outcome of the arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983). A stay is appropriate where "a suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory." *Hill v. GE Power Sys.*, 282 F.3d

5

343, 347 (5th Cir. 2002) (cited in *Eberhard Architects, LLC v. Bogart Architecture, Inc*., No. 1:14-cv-1185, 2014 U.S. Dist. LEXIS 161438, *9 (N.D. Ohio Nov. 17, 2014)). Likewise, when the arbitrable claims predominate the nonarbitrable claims, a district court should consider staying the nonarbitrable claims. *Riley Mfg. Co. v. Anchor Glass Container Corp*., 157 F.3d 775, 785 (10th Cir. 1998) (citing *Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 856 (2d Cir. 1987)).

Here, Ferguson's claims against the Individual Defendants and Lockwood derive from the same operative facts and are inherently inseparable. All parties agree that Ferguson's claims against the Individual Defendants (Counts I, II, IV-VIII, and IX) are subject to contractually-mandated arbitration. (D.N. 71, PageID # 951-61; D.N. 74, PageID # 1032) Moreover, while Lockwood is not a party to the arbitration agreement, the outcome of Ferguson's claims against Lockwood (Counts III-VI, VIII, and IX) will depend in part on the resolution of its claims against the Individual Defendants. (D.N. 71, PageID # 951-961) Counts III, V, and VI require Ferguson to prove that the Individual Defendants misappropriated trade secrets or confidential information. Count IV is a claim against all of the defendants for tortious interference with prospective business clients, and it would be impractical for the Court to try this claim without the Individual Defendants or a finding against the Individual Defendants. The same is true of Count IX, a conspiracy charge. Therefore, the claims against Lockwood will be stayed.

### III.     CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is herby

**ORDERED** as follows:

(1)     The Defendants' Motion to Compel Arbitration and Stay Proceedings (D.N. 64) is **GRANTED**. Ferguson's claims against Defendant Lockwood International, Inc. are **STAYED** for 90 days from the date of entry of this Order, at which time the Court will consider a continuation of the stay if necessary. The parties shall submit a joint status report on or before **January 13, 2016**, advising the Court of their positions regarding the stay and the status of the underlying arbitration. The parties shall promptly report on the resolution of the arbitration should it occur prior to January 13, 2016.

(2)     All other motions (D.N. 3, 63, 72, 75, 76, 80, 82) are **DENIED** without prejudice as moot. With the exception of the deadline set in paragraph (1) above, all pending hearings and associated deadlines, including the hearing set for October 19, 2015, are **VACATED**.